UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARA SOMMEVILLE,

                                                      Case No.: 6:25-cv-00215-CEM-LHP

    Plaintiff,

v.

HIGHER TECH REALTY FL, LLC
d/b/a MARK SPAIN REAL ESTATE,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Defendant, HIGHER TECH REALTY FL, LLC d/b/a MARK SPAIN REAL ESTATE ("Defendant" or the "Company"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss the Amended Complaint filed by Plaintiff Kara Sommerville ("Plaintiff"). In support, Defendant states:

### I. SUMMARY

This lawsuit is utterly without merit. Plaintiff applied multiple times for employment with Defendant, a real estate company. Plaintiff was rejected as a candidate based on her lack of qualifications for any position, before she ever disclosed any alleged disability to the Company. In the Amended Complaint, Plaintiff admits that, during the interview process, she stated that "she has limitations in performing certain real estate agent functions," which is an essential function of any position with the Company. There are no laws requiring the Company to hire an otherwise unqualified candidate merely because she aspires to work there. Plaintiff fails to state any plausible claim upon which relief can be granted. Accordingly, the Amended Complaint must be dismissed, with prejudice.

1

## II.     BACKGROUND FACTS

A brief recitation of the facts surrounding the Amended Complaint are necessary to properly frame the arguments in this Motion to Dismiss. A copy of the Amended Complaint is attached for reference as **Exhibit A.**

Mark Spain Real Estate is an award-winning residential real estate brokerage firm, with eighteen market locations across Georgia, Tennessee, North Carolina, Florida, South Carolina, Alabama, and Texas. As the name suggests, and as alleged by Plaintiff, "Defendant operates a real estate company[.]" Amend. Compl. ¶ 5. This point is dispositive, as explained in detail below.

To be clear, Plaintiff was **never** an employee of the Company. Such allegation in paragraph 9 of the Amended Complaint is directly contradicted and refuted by Plaintiff's own subsequently allegations in paragraph 31 ("Defendant denied Plaintiff this position, via non-response."), and paragraph 52 ("Defendant rejected Plaintiff…"). Rather, Plaintiff had applied for employment numerous times with the Company, but was rejected each and every time for legitimate reasons. In fact, the entire premise of this Amended Complaint is centered upon the Company's alleged failure to hire Plaintiff.

Indeed, extensive does not begin to describe Plaintiff's applications with the Company. Certain of these applications are alleged in the Amended Complaint.[1] In June 2023, Plaintiff applied for a Director of Sales position a with the Company. Amend. Compl. ¶ 13. In November 2023, Plaintiff again applied for a Director of Sales position with the Company. Amend. Compl. ¶ 16. In December 2023, Plaintiff applied for a Regional Director position

---

[1] For purposes of this Motion to Dismiss, Defendant will address only the applications specifically pleaded by Plaintiff in the Amended Complaint. The full record preserved by the Company shows that Plaintiff had applied no fewer than 17 times for employment.

with the Company.  Amend. Compl. ¶ 39.  The Company did not hire Plaintiff for any of these positions.

Plaintiff allegedly suffers from a traumatic brain injury ("TBI"), which causes her to "suffer from severe migraines and hearing loss in her left ear."  Amend. Compl. ¶ 12.  Plaintiff contends her alleged condition "qualifies as a disability/handicap under the ADA and the FCRA."  Amend. Compl. ¶ 11.

With respect to Plaintiff's June 2023 Director of Sales employment application, Plaintiff alleges that she had a phone interview with an employee of the Company, Katelyn Fletcher.  Amend. Compl. ¶¶ 13-14.  Plaintiff was asked to complete a behavioral index assessment as part of the applicant screening and evaluation process.  Amend. Compl. ¶ 15.  This assessment evaluates personality and character traits, and was necessary because the Director of Sales position required an individual who is capable of leading a team of real estate professionals.  Based on Plaintiff's poor assessment results, the Company chose not to proceed with her application.  Plaintiff does **not** allege that she ever disclosed her alleged TBI to the Company as part this application.

Plaintiff alleges that in November 2023, she again applied for a Director of Sales position.  Amend. Compl. ¶ 16.  Plaintiff proceeded to two rounds of interviews with another employee at the Company, Shauna Peters, on November 3, 2023 and November 14, 2023.  Amend. Compl. ¶¶ 17-18.  During the second interview, Plaintiff allegedly "disclosed her disability" to the interviewer.  Amend. Compl. ¶ 23.  Plaintiff alleges that she told Ms. Peters that "**she has limitations in performing certain real estate agent functions[.]**"  Amend. Compl. ¶ 24 (emphasis added).  Plaintiff alleges that her "limitations" were "due to her disability," but that "she would still be able to fully perform the essential functions of the role

3

or which she applied." Amend. Compl. ¶ 24. This assessment, of course, is based upon Plaintiff's own self-evaluation and belief that she was qualified for the position. She does not allege the specific criteria the Company used to evaluate candidates for employment.

While Plaintiff believes she was "qualified for [the Director of Sales] position and was able to perform the essential functions of the job," Amend. Compl. ¶ 28, all positions within the Company—a real estate company—require performance of real estate functions, without self-imposed limitation(s). Plaintiff further concedes that "certain roles were incompatible" with her alleged disability. Amend. Compl. ¶ 25. She does not allege that her subjective determination of compatibility is what determines whether the Company actually hires her. Accordingly, the Company chose not to proceed with Plaintiff's application based on her lack of qualifications.

Plaintiff alleges that "[p]rior to Plaintiff having disclosed her disability to Defendant … Defendant expressed that it would be moving to the next phase of Plaintiff's interview process." Amend. Compl. ¶ 32. Plaintiff also alleges that her second application "strongly appeared to be headed towards a job offer." Amend. Compl. ¶ 34. However, Plaintiff does not allege that the Company ever indicated an intent to give Plaintiff an actual offer, either prior to or after the alleged disclosure.

For reasons unknown to the Company, Plaintiff continued to apply for employment. In December 2023, Plaintiff applied for a Regional Director of Sales position with the Company. Amend. Compl. ¶ 39. This is a higher level position than the Director of Sales position and requires an even greater understanding of and ability to perform real estate functions—which Plaintiff openly stated she had limitations in performing.

A recruiter for the Company, Dave Offer, responded to her application. Amend.

4

Compl. ¶ 41. Plaintiff does **not** allege that she ever disclosed her alleged TBI to the recruiter as part of this application. Based on Plaintiff's extensive application history, all of which was documented by the Company, the decision was made not to proceed with Plaintiff's application. Plaintiff did not receive a follow up response, as none was required. Amend. Compl. ¶ 42-43.

Plaintiff continued to apply for employment with the Company. One of her repeated applications may have been for the same Regional Director of Sales position. Amend. Compl. ¶ 47. Mr. Offer communicated that the Company was denying Plaintiff's application. Amend. Compl. ¶ 48. After this denial, Plaintiff allegedly objected to the Company's decision "via text message" to an undisclosed recipient. Amend. Compl. ¶ 49.

Plaintiff alleges that the Company "still had openings for [director level positions]." but did not hire her for any of those positions. Amend. Compl. ¶¶ 50, 52. Simply put, Plaintiff seems to think she is entitled to whichever job she wants to work. There is no law that requires a company to honor such absurd thought. Notwithstanding the foregoing, Plaintiff has elected to file this instant lawsuit against the Company.

Plaintiff alleges that "[o]n or around October 5, 2024, Defendant … reached out to Plaintiff to solicit her for the same Director of Sales position" that she had previously applied for. Amend. Compl. ¶ 54. Plaintiff does not allege who made the alleged solicitation or whether it was made personally to Plaintiff.

The Amended Complaint purports to set forth four counts: Count I for alleged disability discrimination under the Americans with Disabilities Act (the "ADA"); Count II for alleged ADA retaliation; Count III for alleged handicap discrimination under the Florida Civil Rights Act of 1992 (the "FCRA"); and Count IV for alleged FCRA retaliation. None

of these claims have merit.

### III.   MEMORANDUM OF LAW

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for failure to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citing *Neitzke v. Williams*, 490 U.S. 19, 326-27 (1989)).

To survive dismissal, the complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must do more than recite the elements of a cause of action in a conclusory fashion. *Id.* In construing the complaint, the Court will accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See, e.g. Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004); *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

#### B. Plaintiff Fails to State a Cause of Action for ADA Disability Discrimination

In Count I of the Amended Complaint, Plaintiff alleges that she is a "member of a protected class," that she was "subjected to disparate treatment by Defendant by Defendant on the basis of her disability, and/or perceived disability," and that such disparate treatment was "[s]pecifically, Defendant failed to hire Plaintiff for multiple positions[.]"   Amend.

Compl. ¶¶ 59-61.

"The ADA prohibits an employer from discriminating against 'a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 USC § 12112(a)). To establish a prima facie claim for failure to accommodate under the ADA, a claimant must show that: (1) she is disabled; (2) she is a qualified individual; and (3) she was discriminated against by way of the respondent's failure to provide a reasonable accommodation. *Id.* Plaintiff wholly fails to state a plausible claim of disability discrimination under the ADA.

### i.   Plaintiff is allegedly "disabled."

With respect to the first element, 42 USC 12102(1) defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," having a record of such impairment, or being regarded as having such impairment. "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 USC 12101(2).

For purposes of this Motion to Dismiss only, Defendant acknowledges that the Court may accept Plaintiff's allegations concerning her TBI, "severe migraines," and "hearing loss" as properly pleaded. *See* Amend. Compl. ¶ 12.

### ii.   Plaintiff is not a qualified individual with a disability.

With respect to the second element, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential

functions of the employment position that such individual holds or desires." 42 USC § 12111(8). Plaintiff "must show either that [she] can perform the essential functions of [her] job without accommodation, or, failing that, show that [she] can perform the essential functions of [her] job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). "Thus, if [Plaintiff] is unable to perform an essential function of [her] … job, even with an accommodation, [she] is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id.*

Courts will evaluate whether a function is "essential" on a case-by-case basis. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). An essential function is a fundamental job duty of a position. *See* 29 CFR § 1630.2(n). A function may be essential because the position exists to perform that function, a limited number of employees can perform the function, or the function is highly specialized and requires expertise. *See id.* In determining whether a certain task or skill is an essential function, relevant evidence may include: (1) the employer's judgment as to what functions are essential; (2) a written job description; (3) the amount of time spent on the job performing that function; (4) the consequences of not requiring the employee to perform that function; (5) the work experience of past employees in the position; and (6) the work experience of current employees in similar jobs. *See id.*; *Davis*, 205 F.3d at 1305. In particular, substantial "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *Davis*, 205 F.3d at 1305; *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 126 (11th Cir. 1997).

**First and foremost, Mark Spain Real Estate is a real estate company.** Accordingly, **all** positions within the Company require an understanding and performance of real estate functions – without self-identified and self-imposed limitations. That is **the** fundamental duty of both the Director of Sales position and the Regional Director of Sales positions which Plaintiff had applied for.

Plaintiff concedes in the Amended Complaint that "Defendant operates a **real estate company**[.]" Amend. Compl. ¶ 5 (emphasis added). Plaintiff further concedes that, during one interview, "Plaintiff expressed to Ms. Peters [a Company employee] that although **she has limitations in performing certain real estate agent functions,"**, due to her disability, which limited her from being a full-time real estate agent, she would still be able to perform the essential functions of this role for which she applied." Amend. Compl. ¶ 24 (emphasis added). This concession is dispositive. While the positions for which Plaintiff applied were not, in title, "real estate agent" positions, they were higher level management roles in which she would be directly supervising, training, and managing real estate agents. Therefore, any **qualified** candidate for those positions would not only be required to perform real estate agent functions, but also, have an even greater understanding of the real estate industry to address and resolve any challenges real estate agents may face. In addition, the Director of Sales and Regional Director of Sales would occasionally be required to step in and perform the functions of real estate agents.

Plaintiff's statement that she has limitations in performing certain real estate agent functions—the core responsibility of the positions for which she applied—is conclusive evidence that she is not a qualified individual within meaning of the ADA.

### iii. Plaintiff fails to show disparate treatment on the basis of her alleged disability.

With respect to the third element, Plaintiff must show that she was discriminated against because of her disability. *See, e.g. Mazzo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). In addition, Plaintiff must establish that her prospective employer had actual knowledge of her alleged disability or regarded her as disabled. *See, e.g. Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1186 (11th Cir .2005). And, if an accommodation is necessary, "[Plaintiff] bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential function." *Lucas*, 257 F.3d at 1255-56; *see also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (noting that the employer's duty to provide a reason accommodation is not triggered unless the claimant makes a specific demand for an accommodation).

**"There is no obligation under the [ADA] to employ people who are not capable of performing the duties of the employment to which they aspire."** *Mont-Ros v. City of West Miami*, 111 F.SUpp.2d 1338, 1358 (S.D. Fla. 2000) (emphasis added) (quoting *Sutton v. Lader*, 185 F.3d 1203, 1211 (11th Cir. 1999)); *see also Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) (holding "employers are not required to create positions specifically for the handicapped employee"). Any alleged "disparate treatment" and failure to hire Plaintiff was because she was admittedly unqualified for any position within the Company.

Plaintiff identifies only a percentage of her employment applications with the Company (she had applied a total of 17 times). Even based on these allegations in the Amended Complaint, it is evident that Plaintiff does not and cannot show discriminatory hiring by the Company.

As for Plaintiff's alleged June 2023 application for a Director of Sales position, Plaintiff

does not allege that she ever told the Company about any alleged disability, or requested any accommodation for such alleged disability. Accordingly, there is no connection between the Company's rejection of her application for employment and her alleged disability.

As for Plaintiff's alleged November 2023 application for a Director of Sales position, Plaintiff alleges that she "disclosed her disability to Ms. Peters." Amend. Compl. ¶ 23. But, Plaintiff does not allege that she requested any specific accommodation for such alleged disability that would allow her to perform the essential functions of the position. Instead, in that same interview, Plaintiff admitted that "she has limitations in performing certain real estate agent functions[.]"" Amend. Compl. ¶ 24.

Plaintiff claims that this disclosure "effectively communicated her limitations and engaged in conduct that constitutes a request for a reasonable accommodation[.]" Amend. Compl. ¶ 25. In the alternative, Plaintiff alleges that her disclosure re, at the very least, reasonably interpreted by Defendant as requesting reasonable accommodations." Amend. Compl. ¶ 26. The law states otherwise. First, Plaintiff did not identify, with any degree of specificity, what "accommodation" she is requesting, whether it be interacting with prospective Company clients, assisting real estate agents, or completing real estate paperwork, as some examples. Second, the Company has no duty to "interpret" Plaintiff's disclosure of an alleged TBI as a request for an accommodation, absent a specific, reasonable request by Plaintiff. *See Lucas*, 257 F.3d at 1255-56; *Gaston*, 167 F.3d at 1363.

Indeed, had Plaintiff made any request for an accommodation (she did not), such request would have been futile. The Company was searching for a candidate who was not only able to fully perform real estate agent functions, without limitations, but was further able to supervise and train real estate agents in the performance of such functions. Indeed, full

performance of "real estate agent functions" is a requisite and necessary responsibility of the job, for which no accommodation would have been reasonable or possible.

As for Plaintiff's alleged December 2023 application for a Regional Director of Sales position, Plaintiff does not allege that she ever told the recruiter (Dave), who is not a Company employee, about any alleged disability or requested any accommodation for such alleged disability. In addition, at that time, the Company had a record of Plaintiff's numerous employment applications and repeated rejections. Accordingly, there is no connection between the Company's rejection of this application for employment and her alleged disability.

For the reasons above, Count I for ADA Disability Discrimination should be dismissed, with prejudice.

### C. Plaintiff Fails to State a Cause of Action for ADA Retaliation

In Count II of the Amended Complaint, Plaintiff alleges that "she is a member of a protected class," that she "engaged in protected activity under the ADA by objecting to Defendant's discriminatory failure to hire Plaintiff, based on Plaintiff's disability, and by requesting reasonable accommodations for her disability," and that "Defendant retaliated against Plaintiff for engaging in protected activity under the ADA by subsequently refusing to hire Plaintiff for other positions with Defendant." Amend. Compl. ¶¶ 65-67.

The Opposition Clause of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." *Mont-Ros*, 111 F.Supp.2d at 1360 (citing 42 USC § 12203(a)). To establish a prima facie claim of retaliation under the ADA, Plaintiff must show that: (1) she made a statutorily protected expression; (2)

she was subject to adverse action; and (3) a causal link between the protected expression and the adverse action. *Id.* With respect to the first element, Plaintiff must have a "good faith, objectively reasonable belief" that her activity is protected by the statute. *Id. at 1361.* Once a prima facie case is established, the burden shifts to the employer to present legitimate, nondiscriminatory reasons for its actions that negate the inference of retaliation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

Plaintiff fails to plead a claim for ADA retaliation. As explained in the section above, the only time Plaintiff alleges she disclosed her TBI was in connection with her November 2023 application. But at the same time, Plaintiff also stated that she has limitations in performing certain real estate agent functions, which were required for that position. For the two other employment applications pleaded in the Company, Plaintiff does not allege that she made any form of "statutorily protected expression"—i.e. disclosing that she had an alleged disability or requesting an accommodation for such alleged disability.

As for any alleged objection, based on the Amended Complaint, **the first and only time** Plaintiff supposedly objected to the Company's rejection of her multiple employment applications was after the denial of her final (as alleged) December 2023 application. To that end, Plaintiff alleges that she stated "via text message" that "it feels like a lot of … discrimination in the hiring process here." Amend. Compl. ¶ 49. However, as alleged in the Amended Complaint, Plaintiff had previously applied three other times to work with the Company. Each time, her application for employment was rejected based on her poor (or lack of) qualifications for the position—not because of any objection to the Company's hiring process. As for the alleged "objection," Plaintiff does not allege who the text message was supposedly sent to. Accordingly, there is no causal connection between the Company's

13

decision and any protected expression.

Moreover, as explained above, Plaintiff concedes in the Amended Complaint that Defendant is a real estate company and that she has self-imposed limitations in performing certain real estate agent functions. *See* Amend. Compl. ¶¶ 5, 24. These concessions are dispositive and provide the Company with a legitimate, nondiscriminatory reason for refusing to hire Plaintiff, as she was not qualified for any position with the Company. Plaintiff cannot identify a single law which requires an employer to hire a unqualified candidate. Indeed, there is none.

For the reasons above, Count II for ADA Retaliation should be dismissed, with prejudice.

### D. Plaintiff Fails to State a Cause of Action for FCRA Handicap Discrimination or a Cause of Action for FCRA Retaliation

In Count III of the Amended Complaint, Plaintiff alleges that she is a "member of a protected class under the FCRA," and that she was "subjected to disparate treatment on the basis of her handicap, disability, and/or perceived handicap/disability." Amend. Compl. ¶¶ 72-73.

In Count IV of the Amended Complaint, Plaintiff alleges that she "engaged in protected activity under the FCRA by objecting to Defendant's discriminatory failure to hire Plaintiff, based on Plaintiff's disability, and by requesting reasonable accommodations" and that "Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by subsequently refusing to hire Plaintiff for other positions with Defendant." Amend. Compl. ¶¶ [78-79].

The FCRA makes it unlawful for an employer to "fail or refuse to hire any individual, or otherwise to discriminate against any individual … because of such individual's …

handicap" and to "discriminate against any person because that person has opposed any practice which is an unlawful employment practice [under the FCRA]." Fla. Stat. §§ 760.01(1)(a); (7). "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007). "Because Florida courts construe the FCRA in conformity with the ADA, a disability discrimination cause of action [under the FCRA] is analyzed under the ADA." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1175 (11th Cir. 2005).

For the same reasons set forth above which plainly refute Plaintiff's claims of disability discrimination and retaliation under the ADA, Plaintiff's claims for handicap discrimination and retaliation under the FCRA also fail.

Accordingly, Count III for FCRA Handicap Discrimination should be dismissed, with prejudice. Count IV for FCRA Retaliation should also be dismissed, with prejudice.

### E. Any Amendment would be Futile

While true that "[a] district court, before dismissing a complaint with prejudice because of [certain pleading defects], ordinarily must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect," leave to amend "need not be granted where amendment would be futile." *Washington v. School Bd. of Hillsborough Cnty.*, 2009 WL 4042938, at *6 (M.D. Fla. 2009) (quoting *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000)). Leave to amend is futile "when the complaint as amend could still be properly dismissed[.]" *Washington*, 2009 WL 4042938, at *6 (quoting *Cockell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)).

Plaintiff has already amended her pleading once. The new allegations are arguably in response to Defendant's first Motion to Dismiss. [DE 13]. Any further amendment would

be futile in this action. The timeline of events (applications and rejections) pleaded by Plaintiff in the Amended Complaint, along with her concession that she has self-identified and self-imposed limitations in performing certain real estate agent functions, is dispositive. For Plaintiff to amend the pleading a second time and revise these critical factual allegations, and force the Company to respond based on intentional mischaracterization of material facts warranting dismissal, would constitute fraud upon this Court.

Because no amendment would cure the factual defects in this action, the Company requests that the Amended Complaint be dismissed in its entirety, with prejudice.

## IV.     CONCLUSION

WHEREFORE, Defendant, HIGHER TECH REALTY FL, LLC d/b/a MARK SPAIN REAL ESTATE, respectfully requests that this Court (1) grant this Motion to Dismiss Plaintiff's Amended Complaint; (2) dismiss the Amended Complaint in its entirety for failure to state any cognizable cause of action, with prejudice; and (3) grant any other and further relief as this Court deems just and proper.

### Local Rule 3.01(g) Certification

In compliance with United States District Court, Middle District of Florida Local Rule 3.01(g), undersigned counsel, Connie Felix Chen, Esq., has conferred in good faith with Plaintiff's counsel, Hanna E. DeBella, Esq. (hdebella@wfclaw.com) and Brandon Hill, Esq. (bhill@wfclaw.com) via electronic mail in an effort to resolve the issues addressed in this motion to dismiss. The parties were unable to resolve any of the issues herein. Specifically, on June 2, 2025, Plaintiff's counsel indicated their opposition to this motion.

Respectfully submitted this 2nd day of June, 2025.

*/s/ Connie Felix Chen*
Robin Taylor Symons, Esq.
Florida Bar No.: 356832
rsymons@grsm.com
dsalinas@grsm.com
Connie Felix Chen, Esq.
Florida Bar No.: 1003852
cfchen@grsm.com
**GORDON REES**
**SCULLY MANSUKHANI**
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5309
Facsimile: (877) 644-6209

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2025, a true copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF which will serve a copy of this document, by electronic notice, to all attorneys and parties designated to receive service.

 */s/ Connie Felix Chen*
Connie Felix Chen, Esq.