# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**KARA SOMMERVILLE,**

      **Plaintiff,**

                                        **CASE NO.: 6:25-cv-00215-CEM-LHP**

**v.**

**HIGHER TECH REALTY FL, LLC**
**d/b/a MARK SPAIN REAL ESTATE,**

      **Defendant.**

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, KARA SOMMERVILLE, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 15(a)(1)(B), files this First Amended Complaint as a matter of right against Defendant, HIGHER TECH REALTY FL, LLC d/b/a MARK SPAIN REAL ESTATE, and in support of her claims states as follows:

## JURISDICTION AND VENUE

1. This is an action for damages for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. § 760.01 *et seq.*

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12101 *et seq.* This Court also has pendent jurisdiction over the state law claims.

3.      Venue is proper in this District, because all of the events giving rise to these claims occurred in Orange County which is in this District.

## PARTIES

4.      Plaintiff is a resident of Seminole County, Florida.

5.      Defendant operates a real estate company throughout Florida, and Plaintiff applied to work for Defendant at various locations throughout Florida, including in Orlando, in Orange County, Florida.

## GENERAL ALLEGATIONS

6.      Plaintiff has satisfied all conditions precedent, or they have been waived.

7.      Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

8.      Plaintiff requests a jury trial for all issues so triable.

9.      At all times material hereto, Plaintiff was an employee of Defendant.

10.     At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of the ADA and the FCRA.

## FACTS

11.     Plaintiff suffers from a disability that qualifies as a disability/handicap under the ADA and the FCRA, and as such, is a member of a protected class under the ADA and the FCRA.

12.    Specifically, Plaintiff sustained a traumatic brain injury ("TBI") in or around January 2023, causing Plaintiff to now suffer from severe migraines and hearing loss in her left ear.

13.    In or around June 2023, Plaintiff first applied for the Director of Sales position with Defendant in Orlando, Florida.

14.    Around this time, Plaintiff had a phone interview with Katelyn Fletcher, an employee of Defendant's.

15.    In or around August 2023, Defendant asked Plaintiff to take a behavioral index assessment, as part of Plaintiff's consideration for the position of Director of Sales, which Plaintiff did.

16.    In or around November 2023, Plaintiff again applied for the Director of Sales position with Respondent in Orlando, Florida, as she had not heard back regarding her prior application to this position.

17.    Shortly thereafter, on or around November 3, 2023, Plaintiff was interviewed by Shauna Peters ("Ms. Peters"), an employee of Defendant.

18.    As the initial interview with Ms. Peters went well, Plaintiff then had another interview with Ms. Peters on or around November 14, 2023.

19.    During this interview, Ms. Peters expressed how she believed that Plaintiff would be a great fit for the role, based on the "behavioral index" assessment that Plaintiff had taken as part of the application process and based on Plaintiff's conversations with Ms. Peters.

3

20.     During this interview, Ms. Peters and Plaintiff discussed pay range, bonuses, and benefits.

21.     Ms. Peters demonstrated to Plaintiff every indication that Defendant would be moving forward with the next step of Plaintiff's interview process.

22.     Ms. Peters advised that she would be in touch with Plaintiff for the next interview, which would be with the Vice President of Sales.

23.     Additionally, during this interview, Plaintiff disclosed her disability to Ms. Peters.

24.     Plaintiff expressed to Ms. Peters that although she has limitations in performing certain real estate agent functions, due to her disability, which limited her from being a full-time real estate agent, she would still be able to fully perform the essential functions of this role for which she applied.

25.     In making this disclosure to Defendant of Plaintiff's disability, Plaintiff effectively communicated her limitations and engaged in conduct that constitutes a request for a reasonable accommodation—namely, that her disability did not impede her ability to perform the role she sought, but that certain roles were incompatible, due to her disability.

26.     In the alternative, Plaintiff's disclosure of her disability and her limitations were, at the very least, reasonably interpreted by Defendant as requesting reasonable accommodations.

27.     Accordingly, Plaintiff engaged in protected activity under the ADA and FCRA.

28.     Plaintiff was qualified for this position and was able to perform the essential functions of the job for which she applied, with or without accommodation.

29.     Although Plaintiff's disability limited her from performing a full-time position as a real estate agent, she would have been able to supervise, train, and manage Defendant's real estate agents, and occasionally step in to perform certain functions of real estate agents, and she held an active Florida Real Estate Sales Associate License, as well as an active Florida Real Estate Broker License since 2005.

30.     However, after Plaintiff disclosed her disability to Defendant, she did not hear back from Defendant about the position for which she had applied and interviewed, despite Ms. Peters having advised Plaintiff that Defendant would be in touch to schedule another interview with the Vice President of Sales.

31.     Defendant denied Plaintiff this position, via non-response.

32.     Prior to Plaintiff having disclosed her disability to Defendant, Defendant had indicated every intention that it was on the path toward hiring Plaintiff, as Defendant expressed that it would be moving to the next phase of Plaintiff's interview process—meeting with the Vice President of Sales.

33.     However, it was only after Plaintiff disclosed her disability to Defendant, that Defendant declined to continue the remainder of the interview process.

5

34.    While Plaintiff's first job application to the Director of Sales position, in or around June 2023, also did not result in a job offer, Plaintiff's second application to the Director of Sales position, in or around November 2023, strongly appeared to be headed toward a job offer.

35.    Specifically, Defendant discussed pay range, bonuses, and benefits with Plaintiff and informed Plaintiff that a meeting with Defendant's Vice President was going to occur next.

36.    However, this progress toward a job offer came to a halt only after Plaintiff disclosed her disability to Defendant.

37.    Defendant denied Plaintiff this position based on Plaintiff's disability, in violation of the ADA and FCRA.

38.    Plaintiff objected to this discrimination against her.

39.    Shortly thereafter, in or around early December 2023, Plaintiff applied for another role with Defendant—the position of Regional Director of Sales.

40.    Again, Plaintiff was qualified for this position and was able to perform the essential functions of the job for which she applied with or without accommodation.

41.    In response to Plaintiff's application, on or around December 8, 2023, Dave (a recruiter for Defendant) requested that Plaintiff complete a one-way "video interview" through a website, which Plaintiff promptly did.

42.    However, Plaintiff did not receive a response to her video interview.

43.     Plaintiff messaged Dave on or around December 9, 2023, but still received no response.

44.     On or around December 13, 2023, Plaintiff followed up with Dave for a second time.

45.     Finally, Dave responded to Plaintiff, informing Plaintiff that Defendant will get back to Plaintiff, hopefully, that same week.

46.     However, Defendant's response never came.

47.     Ultimately, on or around December 20, 2023, Plaintiff reached back out to Dave to inquire about the position again and inform Defendant that she had re-applied online for the position.

48.     Plaintiff and Dave engaged in correspondence, wherein Dave suggested that because Plaintiff had been denied from a previous position with Defendant, Defendant was also denying Plaintiff's application to this position.

49.     Plaintiff objected to Defendant's discrimination against her, stating, via text message, "[i]t feels like a lot of . . . discrimination in the hiring process here."

50.     Plaintiff subsequently corresponded with one of Defendant's Talent Acquisition Specialists, who informed Plaintiff that Defendant still had openings for Directors.

51.     Plaintiff was also qualified for these positions and would have been able to perform the essential functions of the jobs.

52.     Despite having open positions, Defendant rejected Plaintiff, based on her disability, in violation of the ADA and FCRA.

53.     On March 18, 2024, Plaintiff filed a Charge of Discrimination with the EEOC ("Charge"), alleging disability discrimination and retaliation, against Defendant.

54.     On or around October 5, 2024, Defendant, in fact, reached out to Plaintiff, to solicit her for the same Director of Sales position that she had applied for and was interviewed for in November 2023.

55.     Defendant, clearly, viewed Plaintiff as qualified for the Director of Sales position, as is evidenced by Defendant's solicitation of Plaintiff for the position, demonstrating that its prior failure to hire Plaintiff was, in fact, due to Plaintiff's disclosure of her disability, not a lack of qualification for the position.

56.     However, although Defendant sought Plaintiff out for future director roles—and despite Plaintiff's qualifications—Defendant still failed to actually hire her for subsequent available director positions, even though Plaintiff would have been qualified for these positions, reinforcing the fact that discriminatory and retaliatory motives drove Defendant's decision-making.

57.     Defendant discrimination against Plaintiff based on her disability and retaliated against her for engaging in protected activity, in violation of the ADA and FCRA.

8

## COUNT I – ADA VIOLATION
## (DISABILITY DISCRIMINATION)

58.    Plaintiff realleges and readopts the allegations of paragraphs 6 through 57 of this Complaint, as though fully set forth herein.

59.    Plaintiff is a member of a protected class under the ADA.

60.    Plaintiff was subjected to disparate treatment by Defendant on the basis of her disability, and/or perceived disability.

61.    Specifically, Defendant failed to hire Plaintiff for multiple positions, after Plaintiff disclosed her disability to Defendant.

62.    Defendant's actions were willful and done with malice.

63.    Plaintiff was injured due to Defendant's violations of the ADA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issue and that this Court take jurisdiction over the case;

c)    That this Court enter an injunction restraining continued violation of the ADA;

d)    Compensation for lost wages, including back pay with interest, benefits, and other remuneration for violation of the Plaintiff's civil rights;

9

e)      Reinstatement of Plaintiff to a position comparable to his prior position, or in the alternative, front pay;

f)      Reinstatement of Plaintiff's full fringe benefits and seniority rights;

g)      Any other compensatory damages, including emotional distress, allowable at law;

h)      Punitive damages;

i)      Prejudgment interest on all monetary recovery obtained.

j)      All costs and attorney's fees incurred in prosecuting these claims; and

k)      For such further relief as this Court deems just and equitable.

## COUNT II – ADA RETALIATION

64.     Plaintiff realleges and readopts the allegations of paragraphs 6 through 57 of this Complaint, as though fully set forth herein.

65.     As a qualified individual with a disability whom Defendant knew or perceived to be disabled, Plaintiff is a member of a protected class under the ADA.

66.     Plaintiff engaged in protected activity under the ADA by objecting to Defendant's discriminatory failure to hire Plaintiff based on Plaintiff's disability, and by requesting reasonable accommodations for her disability.

67. Defendant retaliated against Plaintiff for engaging in protected activity under the ADA by subsequently refusing to hire Plaintiff for other positions with Defendant.

68. Defendant's actions were willful and done with malice.

69. The adverse employment action that Defendant took against Plaintiff was material.

70. Plaintiff was injured due to Defendant's violations of the ADA, for which she is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) That this Court enter a declaratory judgment against Defendant, stating that Defendant interfered with Plaintiff's rights under the ADA;

d) That this Court enter an injunction restraining continued violation of the ADA;

e) Compensation for lost wages, including back pay with interest, benefits, and other remuneration for violation of the Plaintiff's civil rights;

f) Reinstatement of Plaintiff to a position comparable to his prior position, or in the alternative, front pay;

11

g)      Reinstatement of Plaintiff's full fringe benefits and seniority rights;

h)      Any other compensatory damages, including emotional distress, allowable at law;

i)       Punitive damages;

j)       Prejudgment interest on all monetary recovery obtained.

k)      All costs and attorney's fees incurred in prosecuting these claims; and

l)       For such further relief as this Court deems just and equitable.

## COUNT III – FCRA VIOLATION
### (HANDICAP DISCRIMINATION)

71.     Plaintiff realleges and readopts the allegations of paragraphs 6 through 57 of this Complaint, as though fully set forth herein.

72.     Plaintiff is a member of a protected class under the FCRA.

73.     Plaintiff was subjected to disparate treatment on the basis of her handicap, disability, and/or perceived handicap/disability.

74.     Defendant's actions were willful and done with malice.

75.     Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

a)      A jury trial on all issues so triable;

b)  That process issue and that this Court take jurisdiction over the case;

c)  Compensation for lost wages, benefits, and other remuneration;

d)  Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

e)  Any other compensatory damages, including emotional distress, allowable at law;

f)  Punitive damages;

g)  Prejudgment interest on all monetary recovery obtained.

h)  All costs and attorney's fees incurred in prosecuting these claims; and

i)  For such further relief as this Court deems just and equitable.

## COUNT IV – FCRA RETALIATION

30.   Plaintiff realleges and readopts the allegations of paragraphs 6 through 57 of this Complaint, as though fully set forth herein.

31.   Plaintiff is a member of a protected class under the FCRA.

32.   Plaintiff engaged in protected activity under the FCRA by objecting to Defendant's discriminatory failure to hire Plaintiff, based on Plaintiff's disability, and by requesting reasonable accommodations.

33.     Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by subsequently refusing to hire Plaintiff for other positions with Defendant.

34.     Defendant's actions were willful and done with malice.

35.     Defendant took material adverse action against Plaintiff.

36.     Plaintiff was injured by Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a)     A jury trial on all issues so triable;

b)     That process issue and that this Court take jurisdiction over the case;

c)     That this Court enter a declaratory judgment against Defendant, stating that Defendant retaliated against Plaintiff for exercising her rights under the FCRA;

d)     Compensation for lost wages, benefits, and other remuneration;

e)     Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, and all benefits;

f)     Front pay;

g)     Any other compensatory damages, including emotional distress, allowable at law;

14

h)  Punitive damages;

i)  Prejudgment interest on all monetary recovery obtained.

j)  All costs and attorney's fees incurred in prosecuting these claims; and

k)  For such further relief as this Court deems just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury as to all issues so triable.

Dated this 19th day of May, 2025.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**HANNAH E. DEBELLA**
Florida Bar Number: 1026002
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: hdebella@wfclaw.com
Email: aketelsen@wfclaw.com
**Attorneys for Plaintiff**

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of May 2025, the foregoing

was electronically filed with the Clerk of the Court via the CM/ECF system, which

will send a notice of electronic filing to all counsel of record.


/s/ Brandon J. Hill
**BRANDON J. HILL**

16