# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KARA SOMMERVILLE,**

> **Plaintiff,**

**v.**                                                    **CASE NO.: 6:25-cv-00215-CEM-LHP**

**HIGHER TECH REALTY FL, LLC**
**d/b/a MARK SPAIN REAL ESTATE,**

> **Defendant.**

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, Kara Sommerville, respectfully files this Response in Opposition to Defendant, Higher Tech Realty FL, LLC d/b/a Mark Spain Real Estate's Motion to Dismiss Plaintiff's Amended Complaint (referred to as the "Motion to Dismiss" or "MTD") (Doc. 16). Plaintiff respectfully requests that the Motion to Dismiss be denied because the well-pleaded allegations within the four-corners of Plaintiff's First Amended Complaint and Demand for Jury Trial (the "Complaint" or "Amended Complaint")(Doc. 14) clearly demonstrate that Defendant's arguments are meritless.

Simply put, Defendant's Motion to Dismiss should be denied, because Plaintiff was, in fact, qualified for the positions to which she applied, and Defendant's own subsequent outreach to Plaintiff for additional opportunities confirms as much. As explained below, when viewing the pleadings in the light

most favorable to the non-moving party and accepting the well-pleaded facts in Plaintiff's Amended Complaint (Doc. 14) as true, Plaintiff has unquestionably set forth plausible claims for disability discrimination and retaliation under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. § 760.01 *et seq.*

Defendant contends that Plaintiff's claims fail because she was not a qualified candidate and because there is no connection between her disability and Defendant's refusal to hire her. However, Plaintiff's First Amended Complaint plausibly alleges that Defendant's own conduct undermines its arguments, warranting denial of its Motion. Plaintiff has alleged that Defendant showed clear intent to move forward in the hiring process until Plaintiff disclosed her traumatic brain injury ("TBI")—a disclosure that immediately preceded Defendant's decision to halt the process. Moreover, Plaintiff has demonstrated that Defendant's outreach to Plaintiff for future roles after that disclosure, by individuals who were seemingly not yet aware of her TBI, demonstrates that Plaintiff was objectively perceived by Defendant as qualified. Finally, Plaintiff set forth that she effectively requested reasonable accommodations by informing Defendant of her limitations, due to her disability. Plaintiff also alleged that Defendant's subsequent refusal to hire Plaintiff for this role after this request/disclosure, and after she complained of disability discrimination further supports a claim for retaliation. Because the entire premise of Defendant's Motion rests on a mischaracterization of Plaintiff's

qualifications and the timeline of events, and because the well-pleaded facts establish plausible claims for relief, the Motion to Dismiss should be summarily denied.

## **BACKGROUND**

This case involves Defendant's violations of Plaintiff's rights under the ADA and FCRA, where Defendant discriminated against Plaintiff due to her disability, and retaliated against Plaintiff for engaging in protected activity.

In or around January 2023, Plaintiff sustained a traumatic brain injury ("TBI"), causing Plaintiff to now suffer from severe migraines and hearing loss in her left ear. Complaint ¶12.  In or around June 2023, Plaintiff first applied for the Director of Sales position with Defendant in Orlando, Florida, had one phone interview with Ms. Fletcher, but was not offered this position.  Complaint ¶¶13-16. Subsequently, in or around November 2023, Plaintiff again applied for the Director of Sales position with Defendant in Orlando and was interviewed by Ms. Peters. Complaint ¶¶16-17. Plaintiff's interview with Ms. Peters went well and Plaintiff was given a second interview with Ms. Peters on or around November 14, 2023. Complaint ¶18. This second interview was also going well. In fact, Ms. Peters expressed to Plaintiff that she believed Plaintiff would be a great fit for the role, based on a prior "behavioral index" assessment that Plaintiff had taken. Complaint ¶19. Moreover, Ms. Peters discussed pay range, bonuses, and benefits with Plaintiff, and further advised Plaintiff that she would be in touch with Plaintiff for

the next interview, which would be with the Vice President of Sales, giving Plaintiff every indication that Defendant would be moving forward with the next step of Plaintiff's interview process. Complaint ¶¶20-22.

However, during this interview, Plaintiff also disclosed her disability to Ms. Peters, expressing to Ms. Peters that, although she has limitations in performing certain real estate agent functions, she would still be able to fully perform the essential functions of this role for which she applied. Complaint ¶¶23-24, 28. Through this disclosure, Plaintiff communicated her limitations and engaged in conduct that, effectively, constitutes a request for a reasonable accommodation—protected activity under the ADA and FCRA. Complaint ¶25.

Plaintiff was qualified for the position for which she applied, as Plaintiff has held, both, an active Florida Real Estate Sales Associate License and an active Florida Real Estate Broker License since 2005 and would have been able to supervise, train, and manager Defendant's real estate agents, even occasionally stepping in to perform certain functions of real estate agents. Complaint ¶29. Notwithstanding her qualifications, after Plaintiff disclosed her disability to Defendant, Defendant denied Plaintiff the position for which she applied (through non-response), despite Ms. Peters having previously advised Plaintiff that Plaintiff would be moving forward to an interview with Defendant's VP of Sales, and discussing salary and benefits with Plaintiff, demonstrating every indication that Defendant intended to move forward with hiring Plaintiff. Complaint ¶¶30-33. Despite Plaintiff's first job application to the Director of Sales position in or around

4

June 2023 also being unsuccessful, Plaintiff's second application to this position in or around November 2023 strongly appeared to be headed toward a job offer, but this progress toward a job offer was halted only after Plaintiff disclosed her disability to Defendant, in violation of the ADA and FCRA. Complaint ¶¶34-37.

After Plaintiff's disclosure of her disability, Defendant denied Plaintiff from another position—Regional Director of Sales—in or around December 2023. Complaint ¶¶39-47. Ultimately, Plaintiff and Dave (a recruiter for Defendant) engaged in correspondence, wherein Plaintiff objected to Defendant's disability discrimination against her, stating, "[i]t feels like a lot of . . . discrimination in the hiring process here." Complaint ¶¶47-49. After this exchange, Plaintiff re-applied for, both, the Director of Sales and the Regional Director of Sales roles in or around January 10, 2024, but Defendant rejected Plaintiff for these roles, based on Plaintiff's disability and in retaliation for Plaintiff having engaged in protected activity. Complaint ¶¶50-52.

On or around March 18, 2024, Plaintiff filed a Charge of Discrimination with the EEOC for disability discrimination and retaliation against Defendant. Complaint ¶53. On or around October 5, 2024, one of Defendant's recruiters— seemingly unaware of Plaintiff's disability—solicited Plaintiff for the Director of Sales position, for which she had applied and was denied in November 2023, clearly demonstrating that Defendant *did* believe Plaintiff was qualified for this role, and that its prior failure to hire Plaintiff was, in fact, due to Plaintiff's

disclosure of her disability, not a lack of qualification for the position. Complaint ¶¶54-55.

## MEMORANDUM OF LAW

### I.    LEGAL STANDARD

In ruling on Defendant's Motion to Dismiss, the Court must view Plaintiff's Complaint in the light most favorable to Plaintiff and accept all of Plaintiff's well-pleaded allegations as true. *Ziyadat v. Diamondrock Hospitality Company*, 3 F.4th 1291, 1295 (11th Cir. 2021).  "The Court's role in deciding a motion to dismiss is not to weigh competing inferences that may be drawn from the allegations. Rather, the Court must accept the facts pled as true and draw 'all reasonable inferences in favor of the non-moving party.'" *United States v. All-Med Billing Corp.*, 2005 WL 8155964 at *5 (S.D. Fla. April 14, 2005)(quoting *Spanish Broad. Sys. Of Fla. v. Clear Channel Communications*, 376 F. ed 1065, 1070 (11th Cir. 2004).  "The scope of review must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285, F.3d 1334, 1337 (11th Cir. 2002).  Plaintiff respectfully submits that based on Eleventh Circuit precedent, coupled with the well-pleaded facts from her Amended Complaint, Defendant's Motion to Dismiss should be denied.

## II.    DEFENDANT DISCRIMINATED AGAINST PLAINTIFF BASED ON HER DISABILITY

To establish a prima facie case under the ADA and FCRA[1], a plaintiff must demonstrate that "(1) [s]he is disabled under the ADA, (2) [s]he is a qualified individual, with or without accommodations, and (3) [s]he was unlawfully discriminated against because of [her] disability." *E.E.O.C. v. Am. Tool & Mold, Inc.*, 21 F. Supp. 3d 1268, 1274 (M.D. Fla. 2014) (citing *Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir.2004)).

In the instant matter, Defendant does not attempt to contend that Plaintiff is not a disabled individual. (MTD at 7). Specifically, Defendant focuses only on the second and third element of the prima facie case of disability discrimination, claiming that Plaintiff was not qualified for the position(s) for which she applied and that Plaintiff has not shown disparate treatment on the basis of her disability. Defendant is incorrect on both fronts.

Plaintiff has, indeed, set forth a prima facie case in her Amended Complaint. As to the first element, although not argued by Defendant to the contrary, Plaintiff properly pled that she is disabled: "Plaintiff suffers from a disability that qualifies as a disability/handicap under the ADA and the FCRA . . . . Specifically, Plaintiff sustained a traumatic brain injury ("TBI") . . . ." Complaint ¶¶11-12. As to the second element, Plaintiff has pled that she is a qualified individual: "Plaintiff was

---

[1] This Court has stated that, "[t]he Court evaluates a disability discrimination claim under the FCRA using the same framework as ADA claims." *Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353, 1362 (M.D. Fla. 2014) (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

qualified for this position and was able to perform the essential functions of her job . . . . [S]he would have been able to supervise, train, and manager Defendant's real estate agents, and occasionally step in to perform certain functions of real estate agents, and she held an active Florida Real Estate Sales Associate License, as well as an active Florida Real Estate Broker License since 2005." Complaint ¶¶28-29. As to the third element, Plaintiff has pled that she was unlawfully discriminated against by Defendant because of her disability: "Prior to Plaintiff having disclosed her disability to Defendant, Defendant had indicated every intention that it was on the path toward hiring Plaintiff . . . . [I]t was only after Plaintiff disclosed her disability to Defendant, that Defendant declined to continue the remainder of the interview process." Complaint ¶¶32-33.

### A.  Plaintiff was qualified for the position(s) for which she applied.

Defendant contends that Plaintiff was not qualified for the position(s) for which she applied. (MTD at 7-9). This is incorrect. "To show that she is a qualified individual, Plaintiff must allege that she is 'able to perform the essential functions of [her job] with or without reasonable accommodation . . . .'" *Olson*, 63 F. Supp. 3d at 1362 (citing *Reed v. The Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000)). In the *Olson* case "Plaintiff alleges that she is a qualified individual and she was subjected to unlawful discrimination because of her disability." In considering a Motion to Dismiss, this Court found that "Plaintiff's allegations are sufficient to sustain a disability claim . . . ." The Court came to this decision after recognizing the following:

> A complaint **may not be dismissed** pursuant to Rule 12(b)(6) **unless it appears <u>beyond doubt</u> that the plaintiff can prove no set of facts in support of his claim** which would entitle him to relief. [Internal citation omitted].
>
> [And, a claim for relief, pursuant to] 'Federal Rule of Civil Procedure 8(a)(2) **requires only a short and plain statement of the claim** showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'

*Olson*, 63 F. Supp. 3d at 1358 (citing *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 545 (2007)) (emphasis added).

Indeed, in the instant matter, Plaintiff has sufficiently set forth a statement of the claim—specifically, regarding Plaintiff's status as a qualified individual, able to perform the essential functions of the job for which she applied. In *Olson*, the plaintiff pled the following regarding her status as a qualified individual: "Plaintiff . . . is a qualified individual with a disability/handicap and/or was perceived as such by Defendant Dex." Complaint at 2, *Olson v. Dex Imaging, Inc.*, No. 8:14-cv-01829-JSM-TGW (M.D. Fla. 2014). Even with these brief allegations regarding Plaintiff's status as a qualified individual, the *Olson* Court denied a motion to dismiss because the plaintiff alleged "that she is a qualified individual and she was subjected to unlawful discrimination." *Id.* at 1362. In the instant case, Plaintiff has set forth significantly more detailed allegations regarding Plaintiff's qualifications for the position for which she applied.

In particular, Plaintiff has alleged the following:

19. During this interview, **[the interviewer] expressed how she believed that Plaintiff would be a great fit for the role** . . . .

. . .

24. **Plaintiff expressed to [the interviewer] that although she has limitations in performing certain real estate agent functions**, due to her disability, which limited her from being a full-time real estate agent, **she would still be able to fully perform the essential functions of this role** for which she applied.

. . .

28. **Plaintiff was qualified for this position and was able to perform the essential functions** of the job for which she applied, with or without accommodation.

29. Although Plaintiff's disability limited her from performing a full-time position as a real estate agent, **she would have been able to supervise, train, and manage Defendant's real estate agents, and occasionally step in to perform certain functions of real estate agents,** and she held an active Florida Real Estate Sales Associate License, as well as an active Florida Real Estate Broker License since 2005.

. . .

40. [Regarding another position for which Plaintiff applied, a]gain, **Plaintiff was qualified for this position and was able to perform the essential functions** of the job for which she applied with or without accommodation.

. . .

51. **Plaintiff was also qualified for these positions** and would have been **able to perform the essential functions** of the jobs.

. . .

54. On or around October 5, 2024, **Defendant, in fact, reached out to Plaintiff, to solicit her for the same Director of Sales position** that she had applied for and was interviewed for in November 2023.

55. **Defendant, clearly, viewed Plaintiff as qualified for the Director of Sales position, as is evidenced by**

10

**Defendant's solicitation of Plaintiff for the position**, demonstrating that its prior failure to hire Plaintiff was, in fact, due to Plaintiff's disclosure of her disability, not a lack of qualification for the position.

Complaint ¶¶19, 24, 29-29, 40, 51, 54-55 (emphasis added).

The above allegations, accepted as true and viewed in a light most favorable to Plaintiff, as the non-moving party, more than suffice as a "short and plain statement of the claim." *See All-Med Billing Corp.*, 2005 WL 8155964 at *5 (quoting *Spanish Broad. Sys. Of Fla.*, 376 F. ed at 1070)); *Olson*, 63 F. Supp. 3d at 1358. In claiming that Plaintiff was not qualified for the position for which she sought, Defendant, essentially seeks to rely on information outside the four corners of Plaintiff's Complaint, stating "the Company chose not to proceed with Plaintiff's application based on her lack of qualifications." Through this statement, Defendant insinuates to the Court that there is a certain set of criteria that Plaintiff did not meet. This, per se, asks the Court to look beyond the allegations that Plaintiff set forth in her Amended Complaint. Accordingly, a motion to dismiss is not the appropriate vessel through which to make this argument.

However, for the sake of entertaining Defendant's argument, despite its premature nature, Defendant's claims are defeated by Plaintiff's allegations. First, Defendant claims that the positions for which Plaintiff applied would require "directly supervising, training, and managing real estate agents" and "occasionally . . . step[ping] in and perform[ing] the functions of real estate agent. Notably, Plaintiff's Amended Complaint alleges that Plaintiff "would have been able to supervise, train, and manage Defendant's real estate agents, and occasionally step

11

in to perform certain functions of real estate agents . . . ." Additionally, Defendant "clearly viewed Plaintiff as qualified for the Director of Sales position, as is evidence by Defendant's solicitation of Plaintiff for the position," as "on or around October 5, 2024, Defendant [had], in fact reached out to Plaintiff, to solicit her for the same Director of Sales position that she had applied for and was interviewed for in November 2023." Complaint ¶¶54-55. Accepting Plaintiff's allegations as true—specifically, that Plaintiff was qualified for the positions for which she applied and could perform the essential functions of the roles—Plaintiff has set forth a valid legal claim for which relief can (and should) be granted. As such, Defendant's Motion to Dismiss should be denied, as Plaintiff did sufficiently plead the second element of a disability discrimination claim—that she was a qualified individual.

## B.    Defendant denied Plaintiff the position(s) for which she applied, based on Plaintiff's disability.

Defendant next claims that the third element of disability discrimination was not sufficiently pled in Plaintiff's Amended Complaint. (MTD at 10-12). This is false. Plaintiff has properly pled that Defendant denied Plaintiff employment positions *based on Plaintiff's disability*. Defendant ties its argument regarding this third element to Defendant's prior argument regarding Plaintiff's qualifications, claiming that Plaintiff was denied the positions to which she applied, because she was unqualified for them, not because of her disability. As Plaintiff set forth in section II A above, the Amended Complaint contains numerous in-depth allegations regarding Plaintiff's qualifications for these positions. Moreover,

Plaintiff's Amended Complaint sufficiently ties Defendant's denial of these positions to Plaintiff's disability.

Plaintiff's Amended Complaint specifically states, "Prior to Plaintiff having disclosed her disability to Defendant, **Defendant had indicated every intention that it was on the path toward hiring Plaintiff**, as Defendant expressed that it would be moving to the next phase of Plaintiff's interview process—meeting with the Vice President of Sales." Complaint ¶32 (emphasis added). Further, Plaintiff noted, "it was **only _after_ Plaintiff disclosed her disability** to Defendant, th**at Defendant declined to continue the remainder of the interview process**." Complaint ¶33 (emphasis added). The Amended Complaint continues by further attributing Defendant's failure to hire Plaintiff to her disability, stating the following:

> 34. . . . Plaintiff's second application to the Director of Sales position, in or around November 2023, strongly appeared to be headed toward a job offer.
>
> 35. Specifically, Defendant discussed pay range, bonuses, and benefits with Plaintiff and informed Plaintiff that a meeting with Defendant's Vice President was going to occur next.
>
> 36. However, **this progress toward a job offer came to a halt only after Plaintiff disclosed her disability to Defendant**.
>
> 37. **Defendant denied Plaintiff this position based on Plaintiff's disability**, in violation of the ADA and FCRA.
>
> . . .
>
> 39. Shortly thereafter, in or around early December 2023, Plaintiff applied for another role with Defendant—the position of Regional Director of Sales.

. . .

> 52. Despite having open positions, **Defendant rejected Plaintiff, based on her disability**, in violation of the ADA and FCRA.

. . .

> 57. **Defendant discriminat[ed] against Plaintiff based on her disability** . . . in violation of the ADA and FCRA.

Complaint ¶¶34-37, 39, 52, 57 (emphasis added).

Again, Plaintiff sufficiently set forth the final element of disability discrimination, by establishing that Defendant's denial of employment to Plaintiff—specifically, denial of Plaintiff's November 2023 application to Director of Sales and her December 2023 application to Regional Director of Sales—was based on Plaintiff's disability. But-for Plaintiff's disability, Defendant would have offered Plaintiff the position of Director of Sales and/or Regional Director of Sales. These allegations, accepted as true and viewed in a light most favorable to Plaintiff, as the non-moving party, again, more than suffice to set forth a "short and plain statement of the claim." *See All-Med Billing Corp.*, 2005 WL 8155964 at *5 (quoting *Spanish Broad. Sys. Of Fla.*, 376 F. ed at 1070)); *Olson*, 63 F. Supp. 3d at 1358. As such, Defendant's Motion to Dismiss should be denied, as Plaintiff did sufficiently plead the third element of a disability discrimination claim—that she was unlawfully discriminated against because of her disability.

## III. DEFENDANT RETALIATED AGAINST PLAINTIFF FOR ENGAGING IN PROTECTED ACTIVITY UNDER THE ADA AND FCRA

To set forth a prima facie case of retaliation under the FCRA and ADA, a plaintiff "must show that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action." *Olson*, 63 F. Supp. 3d at 1362 (citing *McCann v. Tillmn,* 526 F.3d 1370, 1375 (11th Cir. 2008); see also *Stewart v. Jones Utility and Contracting Co. Inc*., 806 Fed. Appx. 738, 742 (11th Cir. 2020) (setting forth these same elements for a claim of retaliation under the ADA). The Olson Court further stated that "[c]lose temporal proximity between the protected activity and adverse action can satisfy the burden of demonstrating causation." *Olson*, 63 F. Supp. 3d at 1362 (citing *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007).

Defendant claims that Plaintiff fails to state a cause of action for ADA retaliation because "Plaintiff does not allege that she made any form of 'statutorily protected expression.'" (MTD at 13). Not only is this incorrect, as Plaintiff did engage in statutorily protected activity, but Plaintiff also properly pled the second and third elements to set forth a claim of retaliation under the ADA and FCRA. Again, Defendant's argument fails.

Specifically, Plaintiff stated the following in the Amended Complaint, regarding her protected activity:

24. Plaintiff expressed to [her interviewer] that **although she has limitations** in performing certain real estate agent functions, due to her disability, which limited her from being a full-time real estate agent, **she would still be able to fully perform the essential functions of this role** for which she applied.

25. In making this disclosure to Defendant of Plaintiff's disability, **Plaintiff effectively communicated her limitations and engaged in conduct that constitutes a request for a reasonable accommodation**—namely, that her disability did not impede her ability to perform the role she sought, but that certain roles were incompatible, due to her disability.

26. In the alternative, **Plaintiff's disclosure of her disability and her limitations were, at the very least, *reasonably interpreted by Defendant* as requesting reasonable accommodations**.

27. Accordingly, **Plaintiff engaged in protected activity** under the ADA and FCRA.

. . .

37. Defendant denied Plaintiff this position based on Plaintiff's disability, in violation of the ADA and FCRA.

38. **Plaintiff objected to this discrimination** against her.

. . .

48. Plaintiff and [a recruiter for Defendant,] Dave engaged in correspondence, wherein Dave suggested that because Plaintiff had been denied from a previous position with Defendant, Defendant was also denying Plaintiff's application to this position.

49. **Plaintiff objected to Defendant's discrimination against her**, stating, via text message, **"[i]t feels like a lot of . . . *discrimination* in the hiring process here."**

50. Plaintiff subsequently corresponded with one of Defendant's Talent Acquisition Specialists, who informed Plaintiff that Defendant still had openings for Directors.

51. Plaintiff was also qualified for these positions and would have been able to perform the essential functions of the jobs.

52. Despite having open positions, Defendant rejected Plaintiff . . . .

53. On March 18, 2024, **Plaintiff filed a Charge of Discrimination with the EEOC** ("Charge"), **alleging disability discrimination and retaliation**, against Defendant.

54. On or around October 5, 2024, Defendant, in fact reached out to Plaintiff, to solicit her for the same Director of Sales position that she had applied for and was interviewed for in November 2023.

55. Defendant, clearly, viewed Plaintiff as qualified for the Director of Sales position, as is evidenced by Defendant's solicitation of Plaintiff for the position, demonstrating that its prior failure to hire Plaintiff was, in fact, due to Plaintiff's disclosure of her disability, not a lack of qualification for the position.

56. However, although Defendant sought Plaintiff out for future director roles—and despite Plaintiff's qualifications—**Defendant still failed to actually hire her for subsequent available director positions**, even though Plaintiff would have been qualified for these positions, **reinforcing the fact that discriminatory and retaliatory motives drove Defendant's decision-making**.

Complaint ¶¶24-27, 37-38, 48-56 (emphasis added). It is evident that Plaintiff has, indeed, engaged in protected activity, prior to Defendant's denial of employment opportunities to Plaintiff. Moreover, Plaintiff has alleged a causal connection between Defendant's denial of certain employment opportunities to Plaintiff and Plaintiff's protected activity to sufficiently plead retaliation.

Beyond Defendant's claims failing, some of Defendant's statements are just simply untrue. For instance, Defendant claims that Plaintiff's Amended Complaint

fails to identify who Plaintiff sent the text message to regarding Plaintiff's complaints of discrimination in the application process. (MTD at 13). This is false. As Plaintiff set forth above, the Amended Complaint makes clear that Plaintiff sent this text message to Dave, one of Defendant's recruiters in or around late December 2023. *See* Complaint ¶¶41-49. Plaintiff's Amended Complaint then states that "Plaintiff subsequently corresponded with one of Defendant's Talent Acquisition Specialists, who informed Plaintiff that Defendant still had openings for Directors." Complaint ¶50. However, despite Plaintiff being qualified for these positions, Defendant rejected Plaintiff from these open positions, shortly after Plaintiff complained to Dave about the discrimination in Defendant's application process. *See* Complaint ¶¶51-52.

Finally, Plaintiff engaged in protected activity by effectively conveying her need for reasonable accommodations to Defendant through the conversation wherein Plaintiff initially disclosed her disability to Defendant in or around November 2023. *See* Complaint ¶¶25-27. Plaintiff was subsequently denied this employment position. *See* Complaint ¶31. Defendant claims that Plaintiff did not make a specific-enough demand for reasonable accommodation and, thus, did not engage in protected activity through this November 2023 conversation with Defendant. (MTD at 12-13). However, Defendant ignores the fact that the Eleventh Circuit "has not 'determined precisely what form [a request for an accommodation] must take." *Adigun v. Express Scripts, Inc.*, 742 Fed.Appx. 474, 476 (11th Cir. 2018). Nevertheless, the Eleventh Circuit noted that the Tenth Circuit has stated

18

that "a plaintiff 'need not use magic words . . . .'" *Id.* (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). The Eleventh Circuit continues, stating that the Third Circuit has set forth that "a plaintiff making a failure to accommodate claim must have provided 'enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.'" *Id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 314 (3d Cir. 1999)). In *Adigun*, unlike the instant matter, the plaintiff had made no indication that her disability would "conflict with the demands of her position once she returned to work" and she did not provide her employer with 'enough information about her . . . limitations and desires' to trigger [the employer's] duty to accommodate her." *Id.* (quoting *Smith*, 180 F.3d at 1172). In contrast, in the instant matter, the Amended Complaint alleges that "Plaintiff expressed to Ms. Peters that although she has limitations in performing certain real estate agent functions, due to her disability, which limited her from being a full-time real estate agent"—her limitations—"she would still be able to fully perform the essential functions of this role for which she applied"—her desires. Complaint ¶25. Further, the Amended Complaint alleges, "[i]n the alternative, Plaintiff's disclosure of her disability and her limitations were, at the very least, reasonably interpreted by Defendant as requesting reasonable accommodations." After Plaintiff's request for reasonable accommodations in November 2023, Defendant denied Plaintiff the employment position for which she had applied, as well as another employment position just one month later, in or around December

2023. When viewing the Amended Complaint in the light most favorable to Plaintiff and accepting the well-pleaded facts in Plaintiff's Amended Complaint (Doc. 14) as true, Plaintiff has unquestionably set forth a sufficient claim for retaliation under the ADA and FCRA. As such, Defendant's Motion to Dismiss should be denied.

## IV.    CONCLUSION

In sum, because Plaintiff has sufficiently pled that she was qualified for the position(s) for which she applied, she engaged in protected activity, and that Defendant denied Plaintiff's employment because of her disability and in retaliation for her protected activity, Plaintiff has sufficiently pled the prima facie elements of disability discrimination and retaliation under the ADA and FCRA.

For all of the above reasons, treating the factual allegations of the Complaint as true and considering those allegations in the light most favorable to Plaintiff, Defendant's Motion to Dismiss should be denied.  In the alternative, Plaintiff respectfully requests leave to file a Second Amended Complaint.

Dated this 23rd day of June, 2025.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**Wenzel Fenton Cabassa, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712

20

Email: bhill@wfclaw.com
Email: aketelsen@wfclaw.com
**Attorneys for Plaintiff**

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 23rd day of June, 2025, the foregoing

was electronically filed with the Clerk of the Court via the CM/ECF system, which

will send a notice of electronic filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**